**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-00060-MSK

**JAMES CHARLES VAUGHN,**

      Appellant and Cross-Appellee

v.

**UNITED STATES OF AMERICA INTERNAL REVENUE SERVICE,**

      Appellee and Cross-Appellant

---

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT DECISION**

---

**THIS MATTER** is before the Court for review of the December 28, 2011 Order and Judgment of the United States Bankruptcy Court determining that a tax debt owed by Debtor James Vaughn to the Internal Revenue Service ("the IRS") was not dischargeable under 11 U.S.C. § 523(a)(1)(C).

**I.    Procedural Background and Jurisdiction**

Mr. Vaughn filed a voluntary Chapter 11 Petition in November 2006. The IRS filed a proof of claim in that action in the amount of $14,359,592.[1] In 2008, Mr. Vaughn initiated an adversary proceeding seeking a declaration that the taxes were dischargeable. The IRS answered and asserted that the taxes were non-dischargeable under 11 U.S.C. § 523(a)(1)(A) and 11 U.S.C.

---

[1]    The claim was originally denominated as an unsecured claim because the taxes were not entitled to priority under 11 U.S.C. § 507 (a)(8)(A). The IRS later amended the claim, asserting that the taxes were entitled to priority. Their status is not relevant to whether they are excepted from discharge.

§ 523(a)(1)(C).[2]   The IRS filed a motion for partial summary judgment requesting a determination that Mr. Vaughn's tax liability was non-dischargeable under 11 U.S.C. §§ 523(a)(1)(A) and § 507(a)(8)(A)(iii).  That motion was denied, and the matter proceeded to trial on issue of dischargeability of the tax liability under 11 U.S.C. § 523(a)(1)(C).  The Bankruptcy Court determined that Mr. Vaughn's tax liability was non-dischargeable under § 523(a)(1)(C) both because Mr. Vaughn had filed a fraudulent tax return and had willfully evaded his taxes.  The parties have cross-appealed. [3]   This Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## II.     Material Facts found by the Bankruptcy Court

Mr. Vaughn operated a successful cable company that was sold in 1999 for $2.1 billion.  For his interest in the company, Mr. Vaughn received $20 million in cash and $11 million in Adelphia Communications Corporation stock.

Knowing that he would have to recognize taxable capital gains from the sale, Mr. Vaughn consulted with the accounting firm that served his company, KMPG.  The company's former chief financial officer, Mr. Jack Koo, who also profited from the sale, also sought tax advice from KPMG.

To offset gain realized from the sale, KPMG presented  Mr. Vaughn and Mr. Koo with an investment product called a "Bond Linked Issue Premium Structure" (BLIPS).  Reduced to simplest essence, the BLIPS used a combination of a small cash investment, a loan, and a loan

---

[2]     Although asserted as defenses by the IRS, the Bankruptcy Court characterized them as counterclaims, as does this Court.

[3]     Mr. Vaughn challenges the Bankruptcy Court's determinations that he made a fraudulent return and willfully attempted to evade or defeat his taxes (11 U.S.C. § 523(a)(1)(C)).  The IRS challenges the Bankruptcy Court's denial of its motion for summary judgment requesting a determination that Mr. Vaughn's 1999 and 2000 federal income tax liabilities were excepted from discharge under  11 U.S.C. §507(a)(8)(A)(iii).

premium to facilitate a high tax loss without a corresponding economic loss. The high tax loss was intended to offset the gain that Mr. Vaughn and Mr. Koo incurred as a result of the business sale. Both gentlemen invested in the BLIPS product.

Mr. Vaughn and his then-wife filed their 1999 and 2000 tax returns, offsetting the gains from the sale of the company with the losses generated by the BLIPS investment. Consequently, they reported only $2.4 million in capital gains from the sale.

In September 2000, the IRS issued Internal Revenue Bulletin Notice 2000-44, which addressed tax avoidance using artificial basis tax shelters similar to the BLIPS, advised that resulting losses could not be used as deductions for federal income tax purposes, and stated that appropriate penalties could be imposed on participants in such transactions. KPMG sent Mr. Vaughn a copy of this Notice on February 6, 2001. In June of 2001, Mr. Vaughn learned that Mr. Koo was being audited by the IRS with regard to his 1999 return, and that the BLIPS investment was a focus of the audit.

In February 2002, counsel for KPMG met with Mr. Koo and Mr. Vaughn to discuss an IRS settlement initiative for investors in structures like the BLIPS. The attorney advised Mr. Vaughn that he should disclose his participation in the BLIPS to the IRS. He did so in late March 2002. He also provided other information requested by the IRS, and agreed to extension of the statute of limitation to allow the IRS to continue its investigation concerning losses reported on this 1999 tax return. In May 2002 Mr. Vaughn received a letter from the IRS scheduling an appointment to examine his 1999 tax returns.

During 2000 and 2001, after the Internal Revenue Bulletin notice had been send to him, Mr. Vaughn substantially reduced his assets. In September 2001, his divorce from Cindy Vaughn was finalized, leaving him with approximately $9 million in assets. The following

month, he purchased a $1.7 million house and titled it in his fiancé's name. Mr. Vaughn's fiancé spent another $100,000 on décor at the home and $42,000 on jewelry. In March 2002, after meeting with KMPG's counsel, Mr. Vaughn funded a $1.5 million trust for his step-daughter and spent approximately $20,000 on jewelry. These transfers ensured that there would be inadequate funds to satisfy his tax obligations.

### III. Analysis

#### A. Standard of Review

This Court reviews conclusions of law *de novo*. *Connolly v. Harris Trust Co. of Ca.* (*In re Miniscribe Corp.*), 309 F.3d 1234, 1240 (10th Cir. 2002) (citation omitted). Factual findings are reviewed for clear error. *Id*. Factual findings are entitled to deference, unless they are without factual support in the record, or if this Court, having reviewed the evidence, is left with a firm conviction that a mistake has been made. *In re Ford*, 492 F. 3d 1148, 1153 (10th Cir. 2007).

#### B. Dischargeability of Mr. Vaughn's tax obligation

One goal of a debtor in bankruptcy is to discharge pre-petition debts. The types of debts that are excepted from discharge are listed Section 523 of Title 11. The cross-appeals focus on two exceptions - 11 U.S.C. § 523(a)(1)(C) and 11 U.S.C. § 523(a)(1)(A).

Mr. Vaughn asserts error in the Bankruptcy Court's determinations under 11 U.S.C. §523(a)(1)(C) that he: (i) made a fraudulent tax return and (ii) willfully attempted to evade or defeat taxes owed for years 1999 and 2000.[4] The IRS asserts error in the Bankruptcy Court's denial of its Motion for Summary Judgment in which it sought a determination that the taxes

---

[4] In his briefing, Mr. Vaughn focuses on two asserted errors: (i) the Bankruptcy Court erred in determining Mr. Vaughn's reliance on tax professionals such as KPMG was unreasonable; and (ii) the Bankruptcy Court erred in finding that Mr. Vaughn willfully evaded his tax obligations based on his spending before he knew or had reason to know of his potential tax liability. These contentions involve factual findings by the Bankruptcy Court and are addressed in the Court's analysis.

owed for 1999 and 2000 were non-dischargeable pursuant to 11 U.S.C. § 523(a)(1)(A).  The Court begins with Mr. Vaughn's challenges.

Under 11 U.S.C. § 523(a)(1)(C), tax debts can be excluded from discharge on two alternative grounds: (i) making a fraudulent return or, (ii) willfully attempting to evade or defeat a tax.  The Bankruptcy Court determined that Mr. Vaughn's tax debt was excepted from discharge on both grounds.  Mr. Vaughn challenges both determinations, but in order for this Court to reverse the finding of non-dischargeableability of the tax debt, Mr. Vaughn must show that both determinations are erroneous.  Because the Court finds no error with regard to the Bankruptcy Court's determination that Mr. Vaughn willfully attempted to evade his 1999 and 2000 tax obligations, it is unnecessary to address the interesting issues[5] raised by Mr. Vaughn with regard to the Bankruptcy Court's finding that he filed a fraudulent tax return.  For the same reason it is not necessary to explore the issues raised by the IRS in its cross-appeal.

Turning to the question of whether Mr. Vaughn willfully attempted to evade his tax obligations, Mr. Vaughn identifies two alleged errors by the Bankruptcy Court: one of law and one of fact.  To understand these arguments, it is important to recognize the context of the Bankruptcy Court's finding.

The statutory language of § 523(a)(1)(C) is broad, extending to any willful attempted to evade or defeat a tax.  Here, the Bankruptcy Court was concerned with allegations that Mr. Vaughn concealed or transferred assets in order to prevent them from being used to pay his 1999 and 2000 tax liability.  The Bankruptcy Court relied on 10th

---

[5] Among other things, Mr. Vaughn contends that IRS Notice 2000-44 and Reg. Section 1.752-6 should not have be applied retroactively to his 1999 and 2000 tax returns; that the Bankruptcy Court improperly discounted Mr. Vaughn's reliance on his tax professionals at KPMG; and that the Bankruptcy Court's findings only supported a finding that he acted negligently, but non-dischargeability for making a fraudulent return requires a showing of intent.

Circuit authority,[6] as well as authority from outside of this Circuit,[7] that found a "willful attempt to evade or defeat a tax" when a debtor made large discretionary expenditures or concealed or transferred assets so as to render them unreachable by the IRS. In addition, the Bankruptcy Court made extensive factual findings relative to Mr. Vaughn's business sophistication, the time that he became aware of his potential tax liability, and the disposal or consumption of his assets. The Court stated:

> Vaughn exhibited behavior which was inconsistent with his business acumen and was implausible based on that acumen when he participated in the BLIPS investment, Further, by purchasing expensive homes, automobiles, and jewelry, following a divorce which significantly depleted his asses, he further demonstrated such inconsistent behavior. That is, knowing, as he must have, the BLIPS investment constituted an improper abusive tax shelter with no economic basis and no reasonable expectation of profit, he nonetheless continued to spend as if there would be no additional tax to pay. This is simply not logical, unless he had another motive for such spending.
>
> The evidence before the Court not only demonstrates he spent the funds and made the transfers in face of serious financial difficulties, but also indicates his motive in doing so was to reduce assets subject to potential IRS execution. In short, by transferring funds and assets to [his fiancé] and [his stepdaughter] he attempted to take those funds and assets out of the reach of the IRS.

As a legal matter, Mr. Vaughn argues that a debtor must know of a fixed or actual tax liability at the time of transferring assets in order to willfully evade a tax. He further contends that because there had been no assessment or quantification of his 1999 and 2000 tax liability at the time that he made the subject transfers, he could not have willfully attempted to evade such taxes. In support of his legal premise – that a debtor must know of an actual or fixed tax liability

---

[6] *Dalton v. Internal Revenue Serv*ice , 77 F3d 1297 (10th Cir. 1996).

[7] *United States v. Torey*, 640 F3d 739,744(6th Cir. 20122); *United States v. Jacobs* , 490 F3d 913, 921(11th Cir 2007); *United States v. Fegeley*, 118 F3d 979,983 (3rd Cir 2000).

-- Mr. Vaughn offers a survey of opinions in which willful evasion under § 523 was found or affirmed on appeal. He categorizes the opinions in three groups: (i) cases where the debtor's knowledge of tax liability is established by his failure to file a return; (ii) cases where the debtor's knowledge of tax liability is established by the debtor's failure to pay a known tax liability when it is due; and (iii) cases where the debtor learns of a tax liability based on a government decision rejecting the debtor's tax planning strategy. Mr. Vaughn acknowledges in his briefing that "in most of these willful evasion cases, the debtor's knowledge of his tax liability is apparent, and is therefore not discussed or considered extensively. The focus is on the debtor's expenditures and lavish living." **(#20 p. 32)** But then Mr. Vaughn draws the unsupported conclusion that the cases "uniformly confirm that liability for willful evasion cannot be based on spending that occurs before the debtor knows that he owes taxes." **(#20 p. 32)**

Having carefully reviewed the opinions cited by Mr. Vaughn, the Court finds none that address the question of whether there must be a fixed and actual tax liability of which the debtor is aware in order to find willful evasion. Put another way, none of these cases consider whether a debtor's knowledge of an IRS investigation or of a potential tax liability is a sufficient predicate for consideration of the debtor's conduct. At oral argument, the Court inquired of counsel as to whether there was any authority that required the debtor to know of an actual or fixed tax liability in order to find willful evasion based upon concealment or transfer of assets. Neither counsel could identify such authority.

There is authority to contrary, however. The Tenth Circuit opinion in *Dalton v. I.R.S.*, 77 F.3d 1297 (10th Cir. 1996), is most instructive. In *Dalton*, the Tenth Circuit affirmed a Bankruptcy Court's determination that a Chapter 7 debtor's tax obligations were non-dischargeable pursuant to 11 U.S.C § 523(a)(1)(C) due to willful evasion. The Bankruptcy Court

found that the debtor had attempted to conceal his ownership interest in his condo. The debtor argued that he could not have been evading taxes, because he was solvent and had no tax assessments at the time he purchased the condo (the tax assessments were made two years later). In essence, he made the same argument that is raised here – at the time of the concealment, he did not know of an actual or fixed tax liability.

In affirming the bankruptcy court's determination, the Circuit Court began with the observation that the language of 11 U.S.C § 523(a)(1)(C),"willfully attempted in any manner to evade or defeat," is unambiguous, having been widely interpreted in tax cases. *Id* at 1301. Then it noted that although the failure to pay taxes, alone, does not compel a finding that a given tax debt is nondischargeable, nonpayment is relevant evidence which a court should consider in the "totality of the conduct" of the debtor. Consistent with that view, it then turned to the factual findings made by the bankruptcy court.

> A debtor's actions are willful under 11 U.S.C § 523(a)(1)(C) if they are done voluntarily, consciously or knowingly and intentionally. (citation deleted) The determination that a debtor willfully concealed assets is a finding of fact which we review for clear error.

*Id* at 1302.

The Court pointed to two factual findings pertinent to the debtor's knowledge. First, the Bankruptcy Court accepted the testimony of an IRS agent who informed the debtor of a personal tax investigation on or before the debtor's acquisition of the condo. Second, the Bankruptcy Court quoted from a settlement document that provided for a quitclaim of the condo to the debtor "subject to all claims of the United States or any tax liability now validly assessed or hereafter validly assessed." When the debtor received the deed to the condo, he quitclaimed his interest to his wife before recording his interest.

These factual findings were sufficient for the Circuit Court to affirm the Bankruptcy Court's determination of nondischargeability. In doing so, the Circuit Court stated:

> in making its ultimate finding of willful concealment in order to evade or defeat taxes, the court first found that at the time of the purchase, Dalton knew of the tax investigation which was likely to result in a significant assessment, his transfers of money to his betrothed's account were accomplished without any documentation which would properly account for the transaction, and that these circumstances, combined with his actions respecting the settlement . . . indicated an intent to conceal his interest in the condo to avoid attachment of the IRS liens. This finding is not clearly erroneous.

*Id* at 1303.

*Dalton* is important both for its factual similarity to this case and for the analytical approach taken by Court. There was no fixed or actual tax debt at the time Mr. Dalton concealed his ownership in the condo; he knew only of an IRS investigation and possible tax liability. This knowledge was nevertheless sufficient to support the finding of "willful evasion." [8] In light

---

[8] The other interesting feature of *Dalton* is its deference to the factual findings made by the bankruptcy court. Rather than parsing evidence relevant to Mr. Dalton's intent separately from that relevant to his conduct, the Court appears to endorse a holistic review of all of the evidence.

This reflects a different approach than that taken in more recent decisions in other circuits. For example, some courts recognize two, discrete elements that must be proved in order to reach a "willful evasion" determination: (i) a conduct requirement; and (ii) a mental state requirement. *See United States v. Storey*, 640 F3d 739,744(6th Cir 2011); *United States v. Jacobs*, 490 F3d 913, 921 (11th Cir. 2007); *United States v. Fegeley*, 118 F3d 979, 983(3rd Cir. 2000). Although this methodology does not result in an outcome different from *Dalton,* it leads to an artificial compartmentalization and distinction between conduct and state of mind which leads trial courts to attempt to define and then make findings pertinent to each.

In actuality, although conduct and state of mind are both components of the §523(a)(1)(C) analysis, they are not neatly separated. The debtor's state of mind arguably must be considered at two junctures. First, was the debtor's conduct done willfully, that is voluntarily, consciously, knowingly, and intentionally as compared to being the result of ignorance, coercion or a mistake? Second, what was the debtor's purpose or intent in engaging in such conduct -- was it to defeat or evade a tax or for some other purpose such as altruism or generosity? As noted by many courts, intent is rarely expressed. Instead, it is inferred from the debtor's conduct. Thus, the analysis becomes quite circular. The Tenth Circuit's holistic, fact driven approach avoids such analytical circularity.

of this precedent and the apparent absence of any caselaw standing for the proposition that knowledge of an actual or fixed liability is required for a finding of "willful evasion," this Court finds no legal error in the Bankruptcy Court's determination.

Mr. Vaughn's second argument is that there was insufficient evidence in the record to support the Bankruptcy Court's finding that Mr. Vaughn knew of a tax liability for 1999 and 2000 at the time he dissipated his assets. Instead, Mr. Vaughn contends that he did not know of his tax liability until 2003 or 2004. This is a purely factual issue, to which the Court defers to the credibility determinations made by the trial court.

The Court appreciates that this argument derives from Mr. Vaughn's legal position that for "willful evasion" to occur, the debtor must know of a fixed or actual tax debt, and that he did not know, with certainty, the amount of his tax obligation until 2003 or 2004. In accordance with *Dalton*, the Bankruptcy Court engaged in a comprehensive and holistic review of the review of the evidence. Although Mr. Vaughn's liability may not have been quantified until 2003 or 2004, the Bankruptcy Court found that when Mr. Vaughn invested in the BLIPS, he knew there was some risk that the losses he would claim to offset his gains might not be recognized by the IRS. In 2001, when he purchased a home that he titled in the name of his fiancé, he also had been informed of the IRS's position in the Notice 2000-44 and knew that Mr. Koo was subject to an IRS audit regarding the BLIPS transaction. Later, after being advised by KPMG counsel to disclose his BLIPS investment to the IRS but before doing so, Mr. Vaughn transferred $1.5 million to a trust for his step-daughter. The knowledge that he was likely to have <u>some</u> significant tax obligation, even if the precise amount of that obligation was unknown, was

---

It is clear that the Bankruptcy Court attempted to follow the elemental approach and had difficulty doing so. Ultimately, it wove its findings together in the holistic manner anticipated by *Dalton*.

10

sufficient for Mr. Vaughn to form a purposeful intent to conceal or dissipate his assets to evade or defeat his 1999 and 2000 tax obligations. This Court finds no clear error in these findings.

Accordingly, the Court **AFFIRMS** in the Bankruptcy Court's determination that Mr. Vaughn's tax debt for 1999 and 2000 is not dischargeable pursuant to 11 U.S.C § 523(a)(1)(C).

DATED this 29th day of March, 2013

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge